**In re Matter of GRAND JURY SUBPOE-
NAS TO SOUTHWESTERN BELL
MOBILE SYSTEMS, INC.**

No. 95–0024–MC–W–9.

United States District Court,
W.D. Missouri,
Western Division.

May 23, 1995.

Opinion Providing Reasons for Order
May 31, 1995.

---

*ORDER DENYING SOUTHWESTERN BELL MOBILE SYSTEMS, INC.'S MOTION TO QUASH GRAND JURY SUBPOENAS*

BARTLETT, Chief Judge.

Southwestern Bell Mobile Systems, Inc. (SWB) moves to quash the grand jury subpoenas served on it to the extent that the subpoenas seek records that SWB believes are not subject to subpoena under 18 U.S.C. § 2703(c)(1)(C). Specifically, SWB argues that it lawfully be required to produce only long distance cellular telephone billing records because local cellular telephone billing records are not "telephone toll billing records" as that term is used in § 2703(c)(1)(C).

For the reasons stated in some detail on the record on May 19, 1995, the motion will be denied. The intent of Congress is shown by the plain meaning of "telephone toll billing records," which means

> any record (except a record pertaining to content) maintained by an electronic communication service provider identifying the telephone numbers called from a particular telephone or attributable to a particular account for which a communication service provider might charge a service fee. The term includes but is not limited to all records maintained of individual calls made from a particular telephone or attributed to it that are or could be the subject of a particularized charge depending upon the billing plan offered by the provider and accepted by the customer. In order words, the term is broad enough to cover all records of calls from or attributed to a particular number regardless of whether, in fact, a separate charge is assessed for each call.

This definition of "telephone toll billing records" is not contradicted but is supported by available legislative history. Furthermore, this definition accords with common sense in that no reasonable basis has been suggested for Congress to allow grand juries

to subpoena pursuant to § 2703(c)(1)(C) long distance telephone toll billing records but not local telephone toll billing records.

SWB's billing records for cellular telephone customers are "telephone toll billing records" because the numbers telephoned from a particular cellular telephone are recorded and billed based on the amount of air time used. The fact that some customers choose to prepay for a specified amount of air time does not change the character of SWB's records from "telephone toll billing records."

Accordingly, the grand jury's subpoenas lawfully commanded production of SWB's cellular telephone billing records for the two telephone numbers designated.

For the reasons stated, it is ORDERED that SWB's Motion to Quash is denied.

*MEMORANDUM OPINION EXPLAINING REASONS FOR ORDERS OF MAY 19, 1995, AND MAY 23, 1995, DENYING SOUTHWESTERN BELL MOBILE SYSTEMS' MOTION TO QUASH GRAND JURY SUBPOENAS*

This opinion was dictated into the record at the conclusion of the May 19, 1995, hearing on Southwestern Bell Mobile Systems, Inc.'s (Mobile Systems) Motion to Quash. After reviewing the transcript of the hearing, I concluded that substantial editing was necessary to make the record of what I said intelligible. Therefore, this Memorandum Opinion replaces the transcript of the comments I made on May 19, 1995.

On or about March 31, 1995, Mobile Systems received two grand jury subpoenas requesting that Mobile Systems appear before the grand jury and produce "any and all records relating to service provided to two telephone numbers." One subpoena specified "the application for service, credit information and airtime records from a [particular date to the present]." The other subpoena specified the "the application for service, airtime records from [a certain date] and all billing records from [that date]."

On May 8, 1995, Mobile Systems filed a Motion to Partially Quash both of these subpoenas. Mobile Systems argued that the

subpoenas seek to compel Mobile Systems to provide information not authorized because of the 1994 amendments to 18 U.S.C. § 2703. *See* Communications Assistance for Law Enforcement Act, Pub.L. No. 103–414, codified in part at 18 U.S.C. § 2703.

Mobile Systems argued that the words "telephone toll billing records" added to § 2703 in 1994 restricts grand jury subpoenas to requesting only information about long distance cellular airtime records. Mobile Systems requested that the grand jury subpoenas be quashed "as they relate to information about local calls...."

The United States argues that billing records relating to local calls fall within amended § 2703. The United States attached Exhibits A and B to its opposition to the motion. Exhibits A and B are copies of Mobile Systems' billing information pertaining to two different mobile telephones.

Mobile Systems also challenged the subpoenas' request for production of "information about the location to its customer when using the cellular phone." The United States denies that the subpoenas requested this information. Therefore, I will not address that matter.

In 1986, Congress enacted the Electronic Communications Privacy Act of 1986, Pub.L. No. 99–508, codified in part at 18 U.S.C. §§ 2701–2711. The Electronic Communications Privacy Act provided in § 2703(c)(1)(B) for a grand jury to obtain by subpoena "a record or other information pertaining to a subscriber or customer of ..." electronic communications service. Mobile Systems and the Justice Department agree that under the wording of § 2703(c)(1)(B) as it existed prior to 1994, the local airtime information at issue in this proceeding would have been subject to a grand jury subpoena and Mobile Systems would have furnished that information pursuant to a grand jury subpoena.

In 1994 Congress amended § 2703 and created subsection (c)(1)(C) which describes the type of information that could be obtained by a grand jury subpoena.

> A provider of electronic communication service or remote computing service shall disclose to a governmental entity the name, address, telephone toll billing records, telephone number or other subscriber number of identity, and length of service of a subscriber to or customer of such service and the types of services the subscriber or customer utilized, when the governmental entity uses an administrative subpoena authorized by a Federal or State statute or a Federal or State grand jury or trial subpoena or any means available under subparagraph (B).

This 1994 amendment to § 2703 changed the description of the information obtainable by a grand jury subpoena from "a record or other information pertaining to a subscriber or to a customer of such service" to "the name, address, *telephone toll billing records,* telephone number or other subscriber number or identity, and length of service of a subscriber to or customer of such service and the types of service the subscriber or customer utilized...." (emphasis added).

■ Whether Congress intended by its use of the term "telephone toll billing record" to authorize a grand jury to obtain by subpoena only long distance billing records is the issue presented.

In *Morales v. Trans World Airlines,* 504 U.S. 374, 112 S.Ct. 2031, 119 L.Ed.2d 157 (1992), Justice Scalia stated that when the issue is what Congress intended by certain words, "begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose."

Similarly, the Eighth Circuit Court of Appeals stated in *United States v. Jones,* 811 F.2d 444, 447 (8th Cir.1987), that:

> The primary objective of statutory construction is to determine legislative intent. If the wording of a statute is plain, simple and straightforward, the words must be accorded their normal meanings and it is appropriate to assume that the ordinary meaning of those words accurately expresses the legislative purposes.

Courts frequently refer to dictionaries when searching for the ordinary meaning of words. The *Oxford English Dictionary* (1989) defines "toll" as "a charge for a telephone call." The *American Heritage Dictio-*

*nary of the English Language* (1992) defines "toll" as "a charge for service such as a long distance telephone call."

The plain meaning of the words used by Congress, "telephone toll billing records," is billing records that contain information which was used or could be used to charge for telephone calls or services.

Consulting the legislative history reveals nothing which conflicts with the plain meaning of the words used. I could find nothing which supports the conclusion that the term "telephone toll billing records" should be limited to long distance telephone toll billing records.

In the House Judiciary Committee's Report accompanying H.R. 4952 (which became the Electronic Communications Privacy Act of 1986), under the heading "telephone toll records," the following appears:

> As a general matter telephone companies maintain a record of calls placed from a telephone for billing purposes. These business records are primarily used by the telephone company for its own purposes. At the federal level the government can legally obtain access to such records based on a grand jury or trial subpoena or through the use of an administrative summons authorizing a specific federal agency to obtain records. Such government access is usually in connection with an ongoing criminal or civil investigation.

H.R. 99–647, 99th Cong., 2d Sess., 26 (1986).

Section 2703(c) is explained as follows:

> Subsection (c) sets forth the rules under which the government may require the provider of electronic communications services or remote computing services to disclose a record or other transactional information concerning a subscriber or customer (other than the contents of a communication). The type of records involved are billing records and telephone toll records (including the record of long distance numbers and message unit detailing information). The government need not provide notice to the subscriber or customer before it seeks access to these types of records. *Id.* at 69.

Therefore, in 1986 the House Judiciary Committee was aware of message unit detailing information and believed that such information was covered within the provisions of subsection (c). The Committee understood that "telephone toll records" were records of calls placed from a telephone and that these records were maintained for billing purposes by the provider of electronic communications services. Also, the Committee believed that "billing records and telephone toll records" included both records of long distance numbers and message unit detailing information. Nothing in the House Report suggests that message unit detailing information was restricted to long distance calls.

The FBI Access to Telephone Records Act, Pub.L. No. 103–142, adopted in 1993, amended 18 U.S.C. § 2709. Section 2709 was originally enacted in 1986 as part of the Electronic Communications Privacy Act. As adopted in 1986, § 2709(a) referred to "toll billing records information." According to the House Judiciary Committee, § 2709 was amended to allow the FBI to identify in national security cases the identity of callers. H.R. No. 103–46, 103rd Cong., 1st Sess., 1993, U.S.Code Cong. & Admin.News 1913. There is nothing in the House Report that suggests that the Judiciary Committee believed that "toll billing records" allowed the FBI access only to information identifying long distance calls or the parties making long distance calls.

> Section 2709 as enacted in 1986 used the phrase, 'subscriber information and toll billing records information' to describe the information that the FBI could obtain. Instead of 'subscriber information' the amendment here uses more specific terms: 'name, address, length of service.' As used in this section *toll billing records consist of information maintained by a wire or electronic communication service provider identifying the telephone numbers called from a particular phone or attributable to a particular account for which a communication service provider might charge a service fee.* The Committee intends, and

the FBI agrees, that the authority to obtain subscriber information and toll billing records under § 2709 does not require communication service providers to create records which they do not maintain in the ordinary course of business.

*Id.* at 1915 (emphasis added).

Again, a congressional committee understood that the term "telephone toll billing records" referred to records which identify telephone numbers called from a particular phone or attributable to a particular phone without any suggestion that only long distance calls are involved. In addition, the Judiciary Committee believed that "toll billing records" covered not only calls for which a charge was actually made, but also calls for which a communication service provider *might* charge a service fee.

In House Report 103–827, accompanying House Report 4922 pertaining to the 1994 Communications Assistance for Law Enforcement Act, the House Judiciary Committee states that the primary purposes of the Act were to clarify the carrier's duty to assist law enforcement in light of technological advances in electronics communications and to address various privacy concerns such as increasing the restrictions on the interception of conversations over cordless phones. H.R. 103–827, 103rd Cong., 2d Sess., reprinted in 1994 U.S.Code Cong. & Admin.News 3489–90. Nothing in the Judiciary Committee's Report suggests any concern by Congress about protecting cordless telephone users or cellular telephone users from the government acquiring by a grand jury subpoena non-content related billing information about local calls. In fact, nothing in the Report suggests that describing the records a grand jury could subpoena as "telephone toll billing records" was intended to narrow the non-content related billing information that grand juries could subpoena under the 1986 Act.

Furthermore, the Committee's discussion of transactional data does not suggest that "telephone toll billing records" is another way of saying long distance calls. *Id.* at 3511–12.

 Accordingly, I believe that "telephone toll billing records" means any record (except a record pertaining to the content of a conversation) maintained by an electronic communication service provider identifying the telephone numbers called from a particular telephone number or attributed to a particular account for which a communication service provider might charge a service fee. "Telephone toll billing records" covers all records maintained of individual calls made from a particular telephone number or attributed to it that are or could be the subject of a particularized charge depending on the billing plan offered by the provider and accepted by the customer. In other words, a telephone toll billing record is broad enough to cover all records of calls from or attributed to a particular number, regardless of whether, in fact, a separate charge is assessed for each call.

The word "toll" is used to make certain that the providers of electronic communication services were not required to create records not kept in the ordinary course of business. So long as the electronic communication service provider kept information in the normal course of business about individual calls and used this information in billing the customer (even though a charge might not actually be billed on each call because of the service plan selected by the customer), the records are subject to subpoena by a grand jury.

 The records maintained by Mobile Systems, marked Exhibits A and B to the United States' Suggestions in Opposition, are "telephone toll billing records" as used in § 2703(c)(1)(C) and must be produced in response to the subpoenas served on Mobile Systems.

Sufficient information is shown about each call so that Mobile Systems could have billed for each call separately. Mobile Systems did not charge these customers for each call separately because the customer chose to prepay for a certain amount of airtime. However, it appears that even though the customer paid in advance for a designated amount of airtime, Mobile Systems made a charge per minute for each call made. *See* "Interconnect/Land Charges" shown at p. 2 of Exhibit B which is described as a two-cent

per minute charge for all calls made by the subscriber.

It would be unreasonable to construe § 2703 as making the information obtainable by a grand jury subpoena dependent on what payment plan a customer chooses. Nothing suggests that Congress was interested in allowing customers to determine, based on the selection of a billing plan, what documents are "telephone toll billing records" and, therefore, subject to a grand jury subpoena.

For the foregoing reasons, it is OR-DERED that Mobile Systems' Motion to Partially Quash Grand Jury Subpoenas is denied.